UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GLENN and TERRI DAVIS, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL GROUP, and AMERICAN STATES INSURANCE COMPANY,<br><br>Defendants. | CASE NO. C10-5248-RSM<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court upon Defendants American States' and Liberty Mutual's Motion for Summary Judgment (Dkt. #12) and Plaintiffs Glenn and Teri Davis's Motion for Summary Judgment (Dkt. #17). Glen and Teri Davis ("Davis") are real estate developers. This dispute arises out of a claim filed by third parties Stephen and Kathy Johnston (the "Johnstons") against Davis. The Johnstons filed a Notice of Claim for Construction Defects related to improperly installed windows in their residence, which they purchased from Davis.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

1  Dkt. #18, Ex. F. They later sued Davis for breach of contract, breach of implied and express
2  warranties, rescission, misrepresentation, and violation of the Consumer Protection Act ("CPA")
3  arising out of those defects. Dkt. #18, Ex. S. Davis requested coverage and defense from
4  American States Insurance Company ("American States"). American States agreed to defend
5  subject to a reservation of rights. It denied coverage. Davis sued American States and its parent
6  company Liberty Mutual Group seeking a declaratory judgment that American States was
7  required to cover the Johnston claims and damages for breach of insurance contract, bad faith,
8  and violation of the CPA. Dkt. #1-3. Defendants counterclaimed seeking declaratory relief. For
9  the reasons set forth below, the Court GRANTS Defendants' Motion and DENIES Plaintiffs'
10 Motion.

## II. BACKGROUND

In April 2006, Davis contracted with Island Construction to build three residences in a project known as "The Glade". Dkt. #18, Ex. A. The contract required that Davis "be named as additional insured" on Island Construction's commercial general liability ("CGL") policy. *Id.* Accordingly, on April 17, 2006, Island Construction sent Asian Insurance Agency, an American States agent[1], a fax requesting that Davis be added as Additional Insured on his insurance policy. Dkt. #27, Ex. EE.

The next day, Davis received two copies of an Acord Certificate of Liability Insurance certifying that Island Construction had obtained the requisite CGL policy for the period of February 14, 2006 to February 14, 2007. Dkt. #18, Ex. B. One of the Certificates was sent by Arlo Day ("Day"), the sole proprietor of Island Construction. The other Certificate was sent by Asian Insurance Agency. The Certificates listed Davis as "Certificate Holder" and stated that

---

[1] *See* Dkt.#18, Ex. U.

"Certificate Holder is also Additional Insured with respect to Work Performed by Named Insured." Dkt. #18, Ex. B. "Arlo Day dba Island Construction" was listed as the "Insured." *Id.* The certificate also provided that it was issued as "a matter of information only," "confer[red] no rights on the certificate holder" and did not alter the coverage provided by the Policy. *Id.* Davis signed the contract with Day two days after receiving the Certificates, on April 20, 2006, and Day began working on the Glade.

The day after the contract was signed, on April 21, 2006, Day directed American States to delete his name as the "Named Insured" on his CGL policy and substitute it for "Island Constructio[n] 1, Inc." Dkt. #14, Ex. 12. Island Construction 1, Inc. is a business entity that Day registered on February 10, 2006 and of which Day is controlling director, officer, and shareholder. Island Construction 1, Inc. did not become a licensed contractor until March 12, 2007. When the entity was licensed in March 2007, it was issued a contractor registration number that was distinct from that of Arlo Day dba Island Construction. Dkt. #18, Ex. 0.

From November 2006 to February 2007, Day's work included installing windows on what would become the Johnston residence. Dkt. #18, Ex. D. According to progress reports submitted by Day, Day completed installing the windows on all three residences by February 2, 2007. Dkt. #18, Ex. D at 18. Shortly thereafter, Day abandoned the project, only to return two weeks later. On May 18, 2007, Davis terminated Day. Davis and Day entered into arbitration for breach of contract arising out of Day's failure to complete the Glade project in which Day stated that he left the project when it was about 90% complete. Dkt. #18, Ex. E.

The project was completed in late 2007 and the sale of one of the houses to the Johnstons was completed on December 11, 2007. On August 13, 2009 the Johnstons sent Davis an RCW 64.50 Notice of Claim for Construction Defects. Dkt. #18, Ex. F. According to the Notice, the

Johnstons became aware of a leak in the central atrium of their residence in January or February of 2008, shortly after purchasing their home. They hired consultants who informed them that the water intrusion was caused by improper installation of the windows and the weather resistant barrier. Dkt. #18, Ex. G & Ex. H. Experts retained by Davis confirmed this finding. Dkt. #18, Ex. I.

Davis determined that the water intrusion was the result of work performed by Day and tendered his claim to American States for coverage. Bernadette Harrington, a Senior Analyst for American States, informed Davis that American States' preliminary finding was that "[t]he buildings were not finished by Mr. Day when [Davis] terminated his services" and "Mr. Davis was responsible for completing and selling the residence and thus is responsible for the finished product and any damages that flow from the defects alleged in the construction." Dkt. #18, Ex. J. Davis requested a copy of the policy to independently determine whether he was covered, but American States refused on the basis that the policy could not be disclosed without Day's permission or the initiation of litigation.

American States formally denied Davis's claim on December 10, 2009. Dkt. #18, Ex. L. American States' position was that Day was not insured under the policy and therefore neither was Davis:

> On 4/21/2006 the policy was changed by endorsement. Arlo Day was deleted as a Named Insured and the Named Insured was amended to Island Construction 1, Inc. Island Construction 1, INC [sic] did not enter into a contract with [Davis]. Arlo Day dba Island Construction's coverage ended 4/21/2006. The Johnston home was not construed within the time period coverage was afforded to Arlo Day dba Island Construction (2/14/2006 to 4/20/2006). Sale of the Johnston home was November, 2007.

*Id.*

Davis learned that Island Construction 1 Inc. did not become a licensed contractor until March 12, 2007 and relayed this information to Ms. Harrington. However, American States did

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 4

not change its position based on this fact and continued to refuse to provide copies of the Policy to Davis. Later, on February 17, 2010, Mr. Love, representing American States, sent a letter to Mr. Hillman, counsel for Davis, in which he provided additional bases for denying Davis's claim. Dkt. #18, Ex. R. Mr. Love stated that, even if Davis were an additional insured under the policy, he was only an additional insured to the extent that Day was held liable for his "ongoing operations" for Davis. *Id.* at 8. In that letter, he outlined the relevant provisions of the Island Construction policy.

Davis filed the instant lawsuit in King County Superior Court on March 30, 2010 and American States subsequently removed it to this Court. On October 22, 2010, the Johnstons filed a lawsuit in King County Superior Court against Davis. Dkt. #18, Ex. S. The Johnston complaint was tendered to American States for defense. The tender was not initially accepted and the parties stipulated to amend the Davis complaint to include a claim for failure to provide a defense in the Johnston litigation. American States has since agreed to tender the defense under a reservation of rights. Dkt. #22, Ex. 1.

### III. DISCUSSION

**A. Standard of Review**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden

1  of proof" to survive summary judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  In

2  ruling on summary judgment, a court does not weigh evidence to determine the truth of the

3  matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*,

4  41 F.3d 547, 549 (9th Cir. 1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747).  Material facts

5  are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at

6  248.  In this diversity case, the Court applies Washington substantive law.  *Eerie Railroad Co. v.*

7  *Tompkins,* 304 U.S. 6 (1938)*; Kabatoff v. Safeco Ins. Co. of America,* 627 F.2d 207, 209 (9th Cir.

8  1980).

**B.  Additional Insured Status**

The policy's additional-insured endorsement ties Additional Insured status to a

requirement that the Named Insured ("you") enter into a contract with the Additional Insured:

> Any person or organization shown in the Schedule or for whom you are required
> by written contract, agreement or permit to provide insurance is an insured subject
> to the following additional provisions:
>
> a.   The contract, agreement or permit must be in effect during the policy
> period shown in the declarations, and must have been executed prior to the
> "bodily injury," "property damage," "personal and advertising injury." …

Dkt. #14, Ex. 12 at 126.  No person was identified in the schedule.  "You" refers to the Named

Insured.  Dkt. #14, Ex. 12 at 142.  Therefore, whether Davis is an Additional Insured hinges on

whether the Named Insured entered into a contract with Davis to provide Davis insurance.

American States argues that Davis does not qualify as an Additional Insured because the

Named Insured, after April 21, 2006, was Island Construction 1, Inc., and Island Construction 1,

Inc. did not agree to make Davis an Additional Insured.  Rather, Island Construction – Day's

sole proprietorship – entered into the contract with Davis to make Davis an Additional Insured.

Since Island Construction 1, Inc. did not enter into a contract to provide insurance to Davis,

1  Davis is not an Additional Insured under the policy with respect to any liability that occurred
2  after April 21, 2006, when the insurance policy was changed.

3  Davis argues that it could not have been the intent of Day and American States to insure
4  only Island Construction 1, Inc. when the endorsement was made on April 21, 2006 because
5  Island Construction 1, Inc. was not licensed to work as a contractor at the time of the
6  endorsement.  Since interpreting the contract as providing insurance solely to Island
7  Construction 1, Inc. would render the policy illusory, Davis argues that the contract should be
8  construed as continuing to provide insurance to Arlo Day dba Island Construction.  And if the
9  policy provides insurance to Island Construction, then Davis is an Additional Insured under the
10 policy.

11 If the provisions of an insurance contract are unambiguous and easily comprehended, the
12 intent expressed in the policy will be enforced regardless of the intent of the parties.  *Jeffries v.*
13 *General Cas. Co. of America*, 283 P.2d 128 (Wash. 1955).  But "[t]here is another principle
14 applying to contracts of insurance to the effect that if they are so drawn as to require
15 interpretation and fairly susceptible of two different conclusions, the one will be adopted most
16 favorable to the insured; and will be liberally construed in favor of the object to be accomplished
17 and conditions and provisions therein will be strictly construed against the insurer, as they are
18 issued upon printed forms prepared by experts at the instance of the insurer, in the preparation of
19 which the insured has no voice.' *Guaranty Trust Co. v. Continental Life Ins. Co.*, 294 P. 585
20 (Wash. 1930).  Therefore, the Court must first determine whether the American States policy
21 includes any ambiguity.

22 In similar circumstances, Washington courts have found an insurance policy sufficiently
23 ambiguous to warrant construction in favor of the insured.  For example, in *Dennis v. Great Am.*
24

1  *Ins. Co.*, 503 P.2d 1114 (Wash.App. 1972), a Washington Appeals Court was asked to decide
2  whether a husband could recover for his wife's death under his auto insurance policy. The policy
3  specified that "Named Insured" meant the individual named in the declarations (the husband)
4  and also included his spouse.  However, the endorsement related to death and disability provided
5  that, "[w]ith respect to the insurance for death indemnity and total disability, the unqualified
6  word 'insured' means the person or persons so designated for each such coverage in the
7  schedule." *Id.* at 1115.  Only the husband was listed in the schedule. *Id.*  Finally, the
8  endorsement provided that "[n]one of the insuring agreements, exclusions or conditions of the
9  policy shall apply to the insurance afforded by this endorsement except the conditions 'Notice of
10 Accident,' 'Action Against Company (Medical Payments),' 'Changes,' 'Assignment,'
11 'Cancelation' and 'Declarations.'" *Id.* The Declarations section specified "The Named Insured
12 shall be as stated in the policy, if an individual or if husband and wife who are residents of the
13 same household; otherwise for the purpose of these Declarations the Named Insured is _ _"
14 Nothing was inserted into the blank. *Id.*  The *Dennis* court determined that the endorsement was
15 ambiguous and construed the policy in favor of the insured, providing insurance for the death of
16 the wife. *Id.*
17      In the case at bar, as in *Dennis,* there is a discrepancy between the policy and an
18 endorsement.  The endorsement at issue here is the Additional Insured endorsement. Dkt. #14,
19 Ex. 12 at 176.  The policy, standing alone, provided insurance for Davis under the blanket
20 endorsement provision for those with whom the Named Insured was contracted to provide
21 insurance.  Dkt. #14, Ex. 12 at 150.  However, the endorsement purports to alter the meaning of
22 "Named Insured" such that Davis is no longer entitled to insurance.  Contrary to *Dennis,*
23 however, the endorsement at issue does not contain the internal consistencies of that in *Dennis*
24

1  (in which the endorsement provides insurance only for the husband, yet references declarations
2  that provide insurance for the wife also).   The Court does not find the endorsement to rise to the
3  level of ambiguity that was found in *Dennis.  See also Nichols v. CNA Ins. Companies*, 788 P.2d
4  594, 596 - 597 (Wash.App. 1990) (finding ambiguity in auto insurance policy where
5  endorsement that increased cost of coverage purported to diminish scope of coverage).
6  Therefore, there is no basis to construe the contract differently than it was written.

7  Nonetheless, the Court declines to grant summary judgment on this issue in favor of
8  American States.  This is because there are significant questions of material fact concerning
9  whether the endorsement reflected the mutual intent of the parties upon formation.  As such,
10 there may be a basis for reformation of the contract to provide for the parties' actual intent.  A
11 trial court may use its equitable power to reform a contract where there is clear, cogent and
12 convincing evidence of a mutual mistake or a unilateral mistake together with inequitable
13 conduct.  *Wilhelm v. Beyersdorf*, 999 P.2d 54, 59 (Wash.App. Div. 3,2000).  *See also Wash. Mut.*
14 *Savings Bank v. Hedreen*, 886 P.2d 1121 (Wash. 1994).  "Mutual mistake occurs if the intention
15 of the parties is identical at the time of the transaction and the writing executed by them does not
16 express that intention." *Wilhelm*, 999 P.2d 54.  In order to reform a contract on this basis, a court
17 must find not only that a mistake has occurred, but also that the mistake concerns a material fact.
18 *Simonson v. Fendell*, 675 P.2d 1218, 1221 (Wash.1984) (citing 17 Am.Jur.2d *Contracts* § 143
19 (1964)).  The test of materiality is whether the contract would have been entered into had the
20 parties been aware of the mistake.  *Id.*   Finally, "[t]he rules of law governing the reformation of
21 written agreements are applicable to the reformation of an insurance policy. An insurance
22 contract is no different from any other contract, when the rules of law governing the reformation
23
24

of written agreements are to be applied to it." *Rocky Mountain Fire & Cas. Co. v. Rose*, 385 P.2d 45, 49 (Wash. 1963).

*Rocky Mountain* found that it was the intention of the parties to an auto insurance contract that the policy cover both father and daughter as if they were Named Insureds. *Id.* However, the policy was written such that the daughter was only an Additional Insured. *Id.* As such, the insurance company refused to cover the daughter after she traded in her car for another and her husband was involved in an accident while driving her car with her permission. *Id.* The Washington Supreme Court upheld the trial court's reformation of the contract to conform to the parties' intent such that the daughter would be a Named Insured under the policy and the insurance would extend to her husband's accident. *Id.*

Similarly, *Expert Drywall, Inc. v. Brain* held that a general contractor did not violate the contractor registration act, RCW 18.27, by failing to register as a corporation after his business was incorporated and the contractor ceased acting as a sole proprietorship. 564 P.2d 529 (Wash. App. 1997). At issue, in part, were insurance documents that listed the Named Insured as "Larry Ollas doing business as Ollas Construction Company Incorporated." *Id.* at 806. The Court held that the insurance company "had to have known that Ollas incorporated his business," *id.*, and that "to the extent that there was ambiguity or error on the insurance certificate or bond concerning the name of the legal entity covered thereby, these documents were subject to being reformed to show the corporation as the true bonded and insured entity," *id.* at 808.

In yet another case, the Washington Supreme Court held that an insurance contract was subject to reformation and enforcement when an insurance agent inadvertently listed the husband as the owner of the insured property when it was actually the wife who was the owner. *Gaskill v. Northern Assurance Co.,* 132 P. 643, 646 (Wash. 1913). There, the court held, "It was clearly

1  the intention of the Amicks on the one hand, and of the insurance company on the other, to
2  insure this particular building by a valid and binding insurance. … Since the mistake occurred
3  through no fraud, wrong, or misrepresentation on the part of the Amicks, the contract should be
4  reformed to speak the mutual intention of the parties and so enforced.".

5  Turning to the case before us, it appears unlikely that either party intended the
6  endorsement to substantively alter Day's insurance policy such that both Day and Davis were no
7  longer covered by the policy.  The endorsement that changed the name of the Named Insured did
8  so by causing changes to the Declarations page of the insurance policy.  The Declarations page is
9  a form document.  There are several form headings in small typeface, followed by information
10 specific to the insured's policy, written in larger typeface.  Dkt. #13, Ex. 12 at 134.  For example,
11 the first form heading is "Named Insured and Mailing Address."  The policy-specific information
12 that follows is:

>      ARLO DAY
>      DBA ISLAND CONSTRUCTION
>      7176 NE HIDDEN R.
>      BAONBRIDGE [sic] ISLAND, WA 98110

15 *Id.*  The policy also includes an endorsement, dated April 21, 2006.  The endorsement provides:

>      THE CHANGE IN YOUR POLICY RESULTS IN NO CHANGE IN PREMIUM.
>      AMENDING NAMED INSURED AND ENTITY.
>
>      THE FOLLOWING HAS BEEN DELETED
>      --------------------------------------------------------
>      NAMED             #      1      ARLO DAY
>      INSUREDS:
>
>      THE FOLLOWING HAS BEEN CHANGED
>      ----------------------------------------------------
>                        #      2      ISLAND CONSTRUCTIO [sic] 1, INC.

21 *Id.*  The endorsement literally altered the first two lines of the "Named Insured and Mailing
22 Address" portion of the declarations page of the policy:  The first line ("Arlo Day") was deleted.
23 The second line ("dba Island Construction") was changed to "Island Constructio 1, Inc."

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 11

By agreeing to the endorsement, Day and American States may have intended, as American States suggests, to cause a substantive change to the policy such that "the policy was no longer Day's policy; it was Island Construction 1's policy." Dkt. # 12 at 6. However, it is highly plausible that the parties intended a mere clerical amendment to the insurance policy, and did not intend that the amendment would affect the scope of the coverage provided for under the policy, which included coverage for Davis. After all, the amendment did not trigger any change in premium. The policy number remained the same. There is no evidence that American States performed any investigation into the risk profile of Island Construction 1 Inc. to determine whether a change in premium would be warranted. The Court is skeptical that American States would have intended such a broad change in the scope of coverage by way of such a cursory endorsement. For example, could Arlo Day's policy have been transferred to a completely different contracting entity with which Day had no connection simply by way of an endorsement changing the Named Insured to, for example, ACME Construction Co.?

Finally, Day specifically requested that Davis be added to his policy as additionally insured. Dkt. #25, Ex. EE. It is not clear why American States never complied with this request. Had Davis been specifically added to the schedule, Davis' coverage would have remained even after Day changed the entity name listed as Named Insured. Thus, even if American States did not intend to continue covering Day's sole proprietorship following the endorsement, reformation may be warranted on the basis of unilateral mistake coupled with inequitable conduct. *See Wilhelm*, 999 P.2d at 59.

As for Day's intent at the time of requesting the endorsement be made, the Court finds it even more unlikely that Day intended to cease insuring his sole proprietorship and Davis in favor of his newly-incorporated, yet-unlicensed corporate entity. Day paid a premium of $989 for his

insurance policy. At the time, he was under contract to build three residences for Davis –a project for which he was exposed to significant liability and likely would have wanted insurance. Moreover, he was required by law to carry insurance. *See* RCW 18.27.050. With respect to Davis, Day agreed to provide Davis with insurance. He asked his insurance agent to add Davis as additionally insured. Dkt. #24, Ex. EE. He provided Davis with a certificate of insurance demonstrating that Davis was in fact covered under his policy.

There is, in sum, ample reason to believe that the endorsement – which eliminated insurance for Day dba Island Construction and, by extension, for Davis as an Additional Insured – did not reflect the intent of the parties at the time the endorsement was made. *See, e.g., Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 162 P.3d 1153, 1167 (Wash.App. 2007) (holding that an insurance company could be subject to suit if it refused to provide coverage simply because the entity name differed from that on the policy, and the principal officer did business under several different, related names). In the alternative, there may have been unilateral mistake, coupled with inequitable conduct on the part of American States. *Wilhelm v. Beyersdorf*, 999 P.2d 54, 59. Because there are genuine issues of material fact regarding the parties' intent when the endorsement was made and the reasons why Davis was never specifically added to Day's insurance policy, the Court cannot decide as a matter of law whether Davis is an Additional Insured under the policy.[2]

**C. On-going Operations Exclusion**

Notwithstanding the above, even if Davis were an Additional Insured under the policy, the policy does not cover the Johnston claim. The policy limits coverage for the Additional

---

[2] Having so held, and because of the Court's holding below regarding Davis's coverage as an Additional Insured, the Court declines to address the related issue of whether the Certificates of Insurance, specifically, estopped American States from claiming that Davis was not covered under the policy.

Insured to the Named Insured's ongoing operations and excludes coverage for liability arising once work is completed. The Additional Insured endorsement provides:

> [5] Any person or organization shown in the Schedule or for whom you are required by written contract, agreement or permit to provide insurance is an insured, subject to the following additional provisions:
> …
> b. The person or organization added as an insured by this endorsement is an insured only to the extent you are held liable due to:
> …
> (2) <u>your ongoing operations for that insured</u>, whether the work is performed by you or for you;
> …
> d. This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed" operations hazard.
> e. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

Dkt. #14, Ex. 12 at 176. Under the policy, "products-completed operations hazard":

> a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of your product or your work except:
> …
> (2) work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following:
>
> > (a) when all of the work called for in your contract has been completed.
> > (b) when all of the work to be done at the jobsite has been completed if your contract calls for work at more than one jobsite.
> > (c) when that part of the work done at a jobsite has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Dkt. #14, Ex. 12 at 156.

American States argues that the policy language clearly limits coverage for an Additional Insured to property damage that occurs while the Named Insured is still working on the project. American States points to three exclusions to support its conclusion: (1) the "ongoing operations" exclusion, (2) the "products-completed operations hazard", and (3) exclusion for

coverage of an Additional Insured once the Named Insured's operations for the Additional Insured are completed. Since the Johnston claim arose well after Day completed his work on the Johnston residence, American States argues Davis is no longer covered for Day's work.

Davis argues that the various exclusions only preclude coverage for damage that occurs once the Named Insured completes the project. Since the property damage at issue was caused during Day's ongoing operations in improperly installing the Johnstons' windows, the fact that the damage was only discovered after Day had completed his work is irrelevant.

First, the language of the Additional Insured endorsement compels the interpretation advanced here by American States: if Davis was an Additional Insured, he was only covered to the extent that Day was engaged in ongoing operations at the Glade, and Davis's coverage ended when Day's work was completed. The language of the contract compels this conclusion. Davis points to no language that would support his more nuanced interpretation.

Second, a Washington appellate court recently issued a strong endorsement of the position advanced here by American States. *See Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, 189 P.3d 195, 201 - 202 (Wash.App. 2008). The *Hartford* court was presented with the issue of whether an "ongoing operations" exclusion for an Additional Insured precluded coverage where damage that occurred during the sub-contractor's work was discovered once the work had been completed. In holding that the later-discovered damage was not covered, *Hartford* adopted a California decision that detailed the history of such exclusions in insurance contracts:

> *Pardee* [*Construction Co. v. Insurance Co. of the West,* 77 Cal.App.4th 1340, 1359-61, 92 Cal.Rptr.2d 443 (2000)] discusses the evolution of language in standard insurance forms for Additional Insured endorsements in commercial general liability coverage. The history of these forms as set forth in *Pardee* suggests that when such coverage is limited by the phrase "your ongoing operations," the endorsement evinces an intent to provide coverage to the Additional Insured only for liability that arises while the work is still in progress. An example of such liability would be "a course of construction work site

accident involving bodily injury or property damage." *Pardee,* 77 Cal.App.4th at 1360, 92 Cal.Rptr.2d 443. **Without such clearly limiting language, the coverage could be interpreted as extending to completed operations. This would allow a contractor who is an Additional Insured to be indemnified for damages arising from a subcontractor's work even if it is not discovered for years.** *Pardee* recognizes that contractors who have insisted upon being named as Additional Insureds will reasonably expect to be covered for the same completed operations as their subcontractors. "Mindful such litigation is typically complex and expensive, it is reasonable to conclude the key motivation in procuring an Additional Insured endorsement is to offset the cost of defending lawsuits where a general contractor's liability is claimed to be derivative." *Pardee,* 77 Cal.App.4th at 1361, 92 Cal.Rptr.2d 443. **The court concludes that to avoid such broad coverage for an Additional Insured, the insurer must draft and incorporate an express coverage limitation in the policy and endorsement language. The "ongoing operations" term is such a limitation.** *See also Weitz Co., LLC v. Mid-Century Insurance. Co.,* 181 P.3d 309 (Colo.App.2007).

We find the discussion in *Pardee* persuasive.

*Hartford Ins.,* 189 P.3d at 201 – 202 (emphasis added).

The reasoning of *Hartford* and *Pardee* is exceedingly persuasive to this Court as well. *See also Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 887 n.7 (10th Cir. 1991) (holding that if Plaintiff had been an Additional Insured, it would have had to show that "the water tank was not yet being used for its intended purpose; that it was not completed" in order to recover from the insurance company because the "Additional Insured endorsement contains a completed operations clause under which coverage for the Additional Insured ends once the Named Insured completes work on the covered item and it is used for its intended purpose.") The Court is convinced that, if this issue were before the Washington Supreme Court, its decision would be consistent with *Hartford.*

Davis's argument in the face of this strong precedent is essentially that (a) *Hartford* stands for the proposition that only damage "arising out of" the Named Insured's work while on the property is covered and (b) *Equilon Enterprises LLC v. Great Am. Alliance Ins. Co..,* 132 P.3d 758 (2006) holds that "arising out of" requires only a causal connection between the harm

and event creating liability, *ergo* damage that has a causal connection to the Named Insured's work while on the property is covered. Unfortunately, this logic does not hold water: Davis's interpretation of *Hartford* clearly contrasts with the decision actually reached in *Hartford*. Davis also relies on *Gruol Constr. Co., Inc. v. Insurance Co. of North America,* 524 P.2d 427 (Wash.App. 1974) for the proposition that a developer is entitled to insurance coverage where property damage occurs during the policy period but continues to cause damage long after. *Gruol*, however, is inapplicable because, *inter alia*, it does not contain the "ongoing operations" exclusion at issue in the case at bar.

The Court thus determines as a matter of law that Davis would not qualify for coverage if he were an Additional Insured on the policy. Accordingly, the Court GRANTS summary judgment to American States and DENIES summary judgment to Davis on Davis's first cause of action for declaratory judgment and second cause of action for breach of contract.

**D. Bad Faith & CPA Violations**

Davis's bad faith claim is based on "American States' failure to investigate Davis's claim, its unreasonable disregard for the certificate of insurance, and its refusal to provide Davis with a copy of the Policy." Dkt. #24 at 9. To prevail on a bad faith claim, Davis must show four elements: (1) duty, (2) breach of duty, (3) proximate cause, and (4) damages. *Smith v. Safeco Ins. Co.,* 78 P.3d 1274 (2003). American States argues that it had no duty to Davis because he was not an insured. However, if Davis was an insured, American States had a duty "to exercise ordinary and reasonable care in transacting business" with him. Thomas v. Harris, *Washington Insurance Law,* § 2.2 (2d ed. 2006) (citing *Murray v. Mossman,* 355 P.2d 985 (1960)). Nonetheless, an insurer is entitled to summary judgment if reasonable minds could not disagree that denial of coverage was based on reasonable grounds. *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003).

The Court has already held that denial of coverage based on the "ongoing operations" provision of the Additional Insured endorsement was warranted and consistent with the language of the contract. Since American States could readily ascertain that Davis was no longer covered as an Additional Insured by reviewing the language of the endorsement and determining that Day's work on the site had been completed, the Court holds that reasonable minds could not disagree that the investigation performed by American States with respect to Davis' claim was reasonable.

Further, while failure to provide all relevant policy provisions of an insurance policy to an insured constitutes an unfair trade practice, *see* RCW 48.30.010, Davis produces no evidence that American States failed to provide it with the relevant provisions. Rather, the evidence shows that American States sent Davis all of the relevant provisions in the course of its correspondence with Davis regarding coverage. The statute does not require that the entire policy be sent to the insured. RCW 48.30.010. In addition, Day did not permit American States to disclose the policy to Davis. Dkt. #18, Ex. Q. Where the statute only requires disclosure of relevant provisions, and the Named Insured does not permit disclosure of the entire policy, reasonable minds could not disagree that providing only the relevant provisions to a claimant who may or may not be an additional insured was reasonable. Accordingly, the Court GRANTS summary judgment to American States and DENIES summary judgment to Davis on Davis's fourth cause of action for bad faith.

Since the Court has determined that American States did not fail to perform a reasonable investigation prior to denial of coverage and did not fail to disclose all relevant policy provisions, American States did not engage in an unfair trade practice. *See* WAC 284-30-330; WAC 284-30-350. Therefore, American States did not violate the CPA. The Court GRANTS summary

judgment to American States and DENIES summary judgment to Davis on Davis's third cause of action for violation of the CPA.

**E.  Attorneys Fees**

Davis is not entitled to attorneys fees because, as the Court determined above, it was not entitled to coverage under the Island Construction policy. *See Cary v. Allstate Ins. Co.,* 922 P.2d 1335 (1996).

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  American States' Motion for Summary Judgment (Dkt. #12) is GRANTED.

(2)  Davis's Motion for Summary Judgment (Dkt. #17) is DENIED.

(3)  All of Davis's claims are hereby dismissed.

(4)  The Clerk is directed to forward a copy of this Order to all counsel of record.

Dated February 28, 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE